**Joshua L. TRYSON, Petitioner,**

v.

**PENNSYLVANIA INSURANCE DEPARTMENT,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 4, 2001.

Decided Oct. 16, 2001.

Michael P. Rowan, West Chester, for petitioner.

Todd A. Shamash, Harrisburg, for respondent.

---

Before PELLEGRINI, J.,
LEADBETTER, J., and McCLOSKEY,
Senior Judge.

PELLEGRINI, Judge.[1]

Joshua L. Tryson (Tryson) petitions for review of an order of the Insurance Commissioner of the Commonwealth of Pennsylvania (Insurance Commissioner) concluding that the cancellation of his automobile policy by Allstate Insurance Company (Allstate) did not violate the Act of May 17, 1921, P.L. 682, *added by* the Act of June 17, 1998, P.L. 464, *as amended,* 40 P.S. §§ 991.2001–991.2031 (Act 68).[2]

Tryson had an automobile insurance policy with Allstate since December 12, 1993, which was scheduled for renewal on December 12, 1999. In November of 1999, Allstate sent Tryson a renewal notice requesting $577.00 for the semi-annual premium for the policy. At approximately the same time, Tryson contacted his Allstate agent to change to a monthly payment schedule and was told to pay an estimated monthly payment of $92.40 due for December. Tryson then used the $92.40 estimated monthly payment he received from his agent, doubled the amount, and sent Allstate a check in the amount of $184.80 as payment for his monthly premium for December 1999 and January 2000. However, rather than credit Tryson for payment of two months of premiums, Allstate applied the $184.80 payment to the total semi-annual premium and then billed Tryson on December 22, 1999, requesting a minimum payment of $82.64 for his January premium.

In January, Tryson was contacted by his agent advising him that payment for his January premium was overdue. At that time, he told his agent that he had already paid the premium for January and sent her a copy of his cancelled check upon her request. After his agent informed him that Allstate did not credit his account for his December and January premiums, but instead applied his payment against the entire balance due, he paid the entire remaining balance due on his account as his agent suggested. Meanwhile, Allstate cancelled his policy effective February 12, 2000, because it did not receive payment for Tryson's January premium.[3] However, Tryson never received the notice of cancellation.[4]

After receiving Tryson's payment on February 19, 2000, and crediting his account on February 25, 2000, Allstate applied $15.60 to a service charge and prorated coverage through February 12, 2000. Allstate then issued Tryson a refund check for the remainder of his payment on February 28, 2000. On February 29, 2000, Tryson received two telephone calls from his agent who left messages on his answering machine. Later that evening, Tryson spoke with his agent who informed him that his policy had been cancelled for non-payment of premium.

1. This case was reassigned to the author on September 11, 2001.

2. The Commissioner's order also concluded that Tryson's policy terminated effective February 12, 2000, at 12:01 a.m.

3. Section 4 of Act 68 provides, in part: "An insurer may not cancel a policy except for one or more of the following specified reasons: (1) Nonpayment of premium." 40 P.S. § 991.2004(1).

4. In holding that the appeal was timely, the Insurance Commissioner found that Allstate mailed the notice of cancellation but Tryson never received the notice. She held the notice of cancellation was effective because failure to receive the notice did not render the cancellation ineffective. *See* Insurance Commissioner's Adjudication and Order dated October 10, 2000, at 4–5.

Tryson requested review with the Pennsylvania Insurance Department, Bureau of Consumer Services (Department) which dismissed his request as untimely. Tryson then appealed to the Commissioner. The Commissioner appointed a hearing officer and a hearing was held on July 27, 2000.[5]

Concluding that Tryson was not aware of the cancellation of his policy until he was told by his agent due to specific, corroborated mail delivery problems, the Insurance Commissioner held that his request was timely.[6] However, further concluding that Allstate properly cancelled Tryson's policy pursuant to Act 68 and Tryson failed to establish that Allstate was estopped from canceling the policy, the Insurance Commissioner approved Allstate's termination of the policy. In her determination, the Insurance Commissioner noted that although Tryson never received Allstate's cancellation notice, he was still at fault for failing to promptly pay the balance due on his account when he was notified by his agent that the January premium was overdue. This appeal followed.[7]

Tryson contends that the Insurance Commissioner erred in concluding that Allstate's cancellation of his automobile insurance policy violated Act 68. Specifically, Tryson argues that Allstate was estopped from canceling his automobile insurance policy. The doctrine of equitable estoppel requires the party with the burden to establish two essential elements: inducement and reliance. *Hanna v. Public School Employes' Retirement Board*, 701 A.2d 800 (Pa.Cmwlth.1997).

As to the element of inducement, Tryson contacted his agent in November 2000 to change to a monthly payment schedule and was told to pay an estimated monthly payment of $92.40 due for December. After remitting a payment of $184.80 to Allstate to cover his December and January premiums, Tryson first received notice that payment of his January premium was overdue when his agent called him in January 2000.[8] Although he had paid double the estimated monthly payment provided by his agent in December, at her suggestion, Tryson sent her a check for the remaining balance which she told him she would credit to his account. Although, as the Insurance Commissioner found, his agent did not expressly or impliedly promise that his policy would not be canceled, at no time did Tryson receive notice either from Allstate or his agent that he was in any danger of having his insurance policy canceled; instead, he was assured by his agent that his payment was being processed properly and everything was fine.

As to the issue of reliance, Tryson had a long relationship with both Allstate and his agent. He maintained the insurance policy at issue in this case for over ten years and had been dealing with the particular agent, an exclusive agent of Allstate,[9] for over eight years. Based on that long-term relationship, it was quite reasonable for Tryson to rely on the information given to him by his agent, i.e., the estimated

5. Only Tryson, his counsel and Wendy Lyles, Allstate's underwriting manager, were present at the hearing.

6. That issue is not presently before us.

7. Our scope of review of an order by the Insurance Commissioner is limited to determining whether constitutional rights have been violated, an error of law was committed or whether findings of fact were supported by substantial evidence. *Philadelphia County Medical Society v. Kaiser*, 699 A.2d 800 (Pa. Cmwlth.1997).

8. The record is unclear as to the exact date Tryson's agent contacted him regarding his overdue premium.

9. At the July 27, 2000 hearing, Allstate's representative acknowledged that Tryson's agent had the authority to legally bind Allstate.

monthly payment, and also to believe that his insurance policy would not be cancelled without his being notified.

Because there is no indication that Tryson did anything other than follow the instructions of his agent, and in light of his lengthy relationship with Allstate during which he paid his premiums in a timely manner and kept in contact with his agent throughout the entire process, the Insurance Commissioner erred in not rescinding the cancellation. Accordingly the order of the Insurance Commissioner is reversed.

### ORDER

AND NOW, this 16th day of October, 2001, the order of the Insurance Commissioner of the Commonwealth of Pennsylvania, No. PH00–04–042, dated October 10, 2000, is reversed.

McCLOSKEY, Senior Judge, dissenting.

I respectfully dissent as I disagree with the majority's finding that Allstate Insurance Company (Allstate) was equitably estopped from canceling the automobile insurance policy of Joshua L. Tryson (Tryson). The evidence of record indicates that Allstate sent Tryson a notice of cancellation on January 25, 2000, indicating that his policy would be cancelled on February 12, 2000, for nonpayment of premium.[1] In so doing, Allstate complied with the notice requirements of Section 2006 of the Act of May 17, 1921, P.L. 682, *added by* the Act of June 17, 1998, P.L. 464, *as amended*, 40 P.S. §§ 991.2006.[2]

Additionally, the evidence of record indicates that Tryson's Allstate agent contacted him some time in January of 2000 regarding his unpaid premium.[3] Tryson's agent requested that he pay the remaining balance of his premium, $395.70.

Tryson agreed with his agent's suggestion, i.e., to pay the remaining balance. However, Tryson did not promptly pay this balance. Rather, Allstate's agent did not receive a check from Tryson for this balance until February 19, 2000.[4] By this time, Allstate had already cancelled Tryson's policy. For these reasons, I would hold that Allstate was not equitably estopped from canceling Tryson's automobile insurance policy and I would affirm the order of the Insurance Commissioner.

---

1. I note that there is some dispute as to whether Tryson actually received this notice or not, due to continuing problems with his mail, as indicated in the decision of the Insurance Commissioner of the Commonwealth of Pennsylvania (Insurance Commissioner).

2. Section 2006 of Act 68 merely requires an insurer to deliver or mail to the named insured at the address shown in the policy a written notice of the cancellation.

3. As noted by the majority, the record is unclear as to the exact date that Tryson's agent contacted him regarding this premium.

4. Interestingly, the check received by Allstate's agent was dated February 12, 2000, the cancellation date for Tryson's policy.