**FESSENDEN HALL OF PA., INC., Appellee**

v.

**MOUNTAINVIEW SPECIALTIES, INC. and Charles Lafferty, Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 28, 2004.

Filed Dec. 3, 2004.

Kevin J. Sommar, Lansdale, for appellant.

Richard I. Moore, Southampton, for appellee. (submitted)

Before: STEVENS, KLEIN, JJ., and McEWEN, P.J.E.

KLEIN, J.:

¶ 1 Charles Lafferty appeals from the judgment entered against him following a non-jury trial on stipulated facts, in which the trial court found Lafferty liable as the guarantor of a debt of Mountain-

view Specialties, Inc. The trial court denied Lafferty's motion for new trial. We affirm.[1]

¶ 2 Fessenden Hall of Pa., Inc. supplied goods to Mountainview Specialties, Inc. When the business relationship began in 1992, Lafferty was the sole shareholder of Mountainview. Fessenden Hall only agreed to extend a line of credit to Mountainview after the execution of a written agreement whereby Lafferty personally guaranteed Mountainview's debts.

¶ 3 In 1997, Lafferty sold all of Mountainview's assets, including its name, to TSG & TCB Future Corporation. Lafferty changed the name of his old company to CL Enterprises, Inc. and dissolved it. The purchaser of Mountainview's assets continued to do business as Mountainview Specialties, Inc., and Lafferty remained on as a salaried employee. The business relationship with Fessenden Hall continued with no changes, including using the same company name, same business address, and same purchase order forms. The parties stipulated that there was nothing that would have alerted Fessenden Hall to the change in Mountainview's ownership status.

¶ 4 It was only when the "new" Mountainview defaulted on its credit obligations and Fessenden Hall sought recovery against Lafferty individually that Lafferty claimed the debt was from a "different" corporation and he was not obligated to pay its debts.

■ ¶ 5 Essentially, Lafferty claims that the Statute of Frauds prevents Fessenden Hall from collecting from him, since there was no written guarantee of the debts of the "new" Mountainview Spe-

cialties, Inc. This argument fails for two reasons: (1) the initial written agreement, which satisfied the Statute of Frauds, was never renounced; and (2) Lafferty can be held liable under the doctrine of equitable estoppel.

■ ¶ 6 The doctrine of equitable estoppel is applicable whenever a party, either by act or representation, intentionally or negligently induces another to believe certain facts, and the other justifiably relies and acts upon that belief. *Liberty Prop. Trust v. Day–Timers, Inc.*, 815 A.2d 1045, 1050 (Pa.Super.2003), *app. denied*, 578 Pa. 701, 852 A.2d 313 (2004). If the relying party is prejudiced by such reliance, the other party is estopped from denying those facts or repudiating his conduct or statements. *Id.*

¶ 7 That is the case here. There is a valid guaranty satisfying the requirements of the Statute of Frauds that holds Lafferty personally responsible for the debts of "Mountainview Specialties, Inc." to Fessenden Hall. Lafferty is now estopped from claiming that the debt is not from the "old" Mountainview but instead the "new" Mountainview. Lafferty's failure to notify Fessenden Hall of the change in ownership without a change in name—exacerbated by the fact that he was still the only person with whom Fessenden Hall dealt—precludes this claim. *See Day–Timers, supra.* Fessenden Hall would not extend a line of credit to Mountainview without an individual guaranty, so it was clearly prejudiced by Lafferty's failure to renounce the guaranty.

¶ 8 While this exact issue is one of first impression under Pennsylvania law, we find a decision by the United States Court

---

1. Our standard of review of the grant or denial of a motion for new trial is whether the trial court clearly and palpably abused its discretion or committed an error of law that

controlled the outcome of the case. *Stevenson v. Gen. Motors Corp.*, 513 Pa. 411, 521 A.2d 413, 422 (1987).

of Appeals for the Third Circuit, addressing very similar facts, instructive. In *Garden State Tanning, Inc. v. Mitchell Manufacturing Group, Inc.*, 273 F.3d 332 (3d Cir.2001), a parent corporation guaranteed its subsidiary's debts and then sold the subsidiary. The debtor, however, "did not know the details of the transfer, and the company to which it continued to ship its goods after the sale bore the same name and mailing address." *Id.* at 337. The parent company tried to avoid liability for the subsidiary's debts, claiming, in part, that because of the modification created by the subsidiary sale, the parent was no longer liable. *Id.* at 334. The case proceeded to trial, and the jury found the parent liable for the total amount of the subsidiary's debts. The Third Circuit, applying Pennsylvania law, affirmed, concluding that the parent had encouraged the sale and never notified the creditor that it no longer intended to honor the written guaranty. *Id.* at 337.

¶ 9 The Third Circuit followed the modern trend away from applying strict principles of surety and guaranty law. *Id.* at 336–37. Under Pennsylvania law, *strictissimi juris* is a rule of construction providing that when surety obligations are assumed by individuals without compensation, *i.e.*, "gratuitous" sureties, their obligations are to be strictly construed and may not be extended by implication. *J.F. Walker Co. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269, 1274 (Pa.Super.2002). This rule, however, does not apply to compensated sureties. *Id.* at 1275. The Third Circuit in *Garden State* concluded that the parent company was a compensated surety because it had a financial interest in ensuring that its subsidiary remained in operation. Thus, the court declined to apply the *strictissimi juris* rule. 273 F.3d at 336.

¶ 10 Instead, once it determined that the parent was a compensated surety, the Third Circuit applied equitable principles in affirming the jury's verdict. *Id.* at 337. In particular, the court observed that the jury found it "highly significant that [the parent company] never communicated its intent to revoke the guaranty until contacted by Garden State." *Id.* The jury's decision was also impacted by "the fact that Garden State, relying on Owosso's guaranty, shipped substantial amounts of leather to Mitchell–Lamont, a course of action it likely would not have followed in the absence of the guaranty." *Id.*

¶ 11 That is precisely the situation in this case. Lafferty was a compensated surety, as he was Mountainview's sole shareholder at the time of the agreement and his company would not have been extended credit if he had not signed the guaranty. *See Garden State, supra; see also McIntyre Square Assocs. v. Evans*, 827 A.2d 446, 452 & n. 8 (Pa.Super.2003) (concluding guarantors were compensated due to their status as officers and owners of debtor company at time of guaranty); *J.F. Walker*, 792 A.2d at 1274–75 (sole shareholder in debtor corporation was compensated surety where, in exchange for guaranty, creditor extended credit to corporation in which he owns all shares). Moreover, Fessenden Hall only agreed to extend a line of credit to Mountainview after Lafferty signed a contract individually guaranteeing Mountainview's debts. We believe the Third Circuit correctly predicted that our courts would preclude someone in Lafferty's position from shirking his contractual obligations. *Garden State, supra.*

¶ 12 As the trial court aptly concluded: Defendant here is estopped from denying his responsibility under the subject guarantee agreement. It was Defendant's responsibility to inform his creditors of the change in ownership of the company. Because of his failure to act,

that is, his failure to notify Plaintiff that he no longer intended to honor the guarantee agreement, Defendant misled Plaintiff into believing that it was still protected by Defendant's personal liability for default under the credit agreement.

(Trial Court Op., 1/27/04, at 5–6.) We could not have said it better. We find no error or abuse of discretion. *Stevenson, supra.*

¶ 13 Judgment affirmed.