# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Township of Bristol | : |
| | : |
| v. | : No. 658 C.D. 2017 |
| | : Argued: December 4, 2017 |
| 1 Enterprises, LLC, | : |
| Appellant | : |
| | |
| Township of Bristol, | : |
| Appellant | : |
| | : No. 727 C.D. 2017 |
| v. | : Argued: December 4, 2017 |
| | : |
| 1 Enterprises, LLC | : |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION BY
SENIOR JUDGE COLINS                                    FILED: January 5, 2018

These are consolidated cross-appeals from a judgment entered by the Bucks County Court of Common Pleas (trial court) in an eminent domain case in the amount of $61,500 in favor of African Century Industries, LLC (Condemnee) and against the Township of Bristol (Township), following a nonjury trial. For the reasons set forth below, we affirm.

On October 27, 2006, the Township filed a Declaration of Taking condemning a property situated at 1248/1250 Murphy Drive (also known Marie Lowe Drive), Bristol Township and identified on the Bucks County Tax Map as Tax Map Parcel 5-61-499 (the Property) for the purpose of constructing a recreation and community center. (Declaration of Taking, Reproduced Record

(R.R.) at 17a-33a.) Condemnee, a Delaware limited liability company, had purchased the Property on January 10, 2006 for $40,000 and was the owner of the Property at the time of the taking. (Declaration of Taking ¶2, R.R. at 17a; Deed, R.R. at 25a-26a.) At the time that Condemnee purchased the Property, there were recorded Internal Revenue Service (IRS), Pennsylvania Department of Labor & Industry (Department of Labor & Industry), and Bristol Borough Water & Sewer Authority (Water & Sewer Authority) liens against the Property. (Petition to Distribute Just Compensation Ex. A, Title Report, R.R. at 42a-44a; Memorandum of Law in Opposition to Petition to Distribute Just Compensation, R.R. at 67a-68a.) These liens were filed against the Property between 1997 and 2003 and the amount of those liens, as of the dates that they were filed, totaled $94,700.60. (Petition to Distribute Just Compensation Ex. A, Title Report, R.R. at 42a-44a; Memorandum of Law in Opposition to Petition to Distribute Just Compensation, R.R. at 67a-68a.) Condemnee did not pay down any of these liens during its ownership of the Property. (Trial Transcript at 86-87.)

In the Declaration of Taking, the Township estimated the just compensation for the Property at $115,000. (Declaration of Taking ¶10, R.R. at 18a.) Condemnee filed a petition for appointment of a board of viewers on March 9, 2007, and the trial court appointed a board of viewers to determine just compensation. On April 2, 2007, the Township filed a petition to distribute just compensation seeking to pay the estimated $115,000 just compensation into court because Condemnee would not consent to payment of the liens on the Property. In response, Condemnee admitted that the $94,700.60 in IRS, Department of Labor & Industry, and Water & Sewer Authority liens shown on the Township's title report for the Property were valid liens on the Property when the Declaration of Taking

2

was filed. (Answer to Petition to Distribute Just Compensation ¶¶6, 10-11, R.R. at 54a-55a; Memorandum of Law in Opposition to Petition to Distribute Just Compensation, R.R. at 67a-68a.) Condemnee also admitted that the Township could pay the $94,700.60 face amount of these liens to those three lienholders from the just compensation, but contended that the Township could not pay any interest or penalties on those liens. (Answer to Petition to Distribute Just Compensation ¶¶6, 10-11, R.R. at 54a-55a; Memorandum of Law in Opposition to Petition to Distribute Just Compensation, R.R. at 67a-68a.) On October 26, 2007, the trial court issued an order denying the Township's request to pay the estimated just compensation into court and ruling that the Township "shall distribute damages to the Condemnee directly in the sum of $115,000 less any liens (with any interest, penalties and fees allowable by law) existing as of the date of the Declaration of Taking, October 27, 2006." (R.R. at 77a.)

On September 27, 2007, while the Township's petition was pending, the board of viewers filed its report awarding $140,000 in just compensation and $2,500 for Condemnee's appraiser's fees. (Report of the Board of View, R.R. at 182a-185a.) Condemnee appealed the board of viewers' decision to the trial court the same day and demanded a jury trial. On November 10, 2008, the Township paid the $140,000 awarded by the board of viewers to the three holders of liens and municipal claims on the Property, paying $116,474.15 to the IRS, $7,082.47 to the Department of Labor & Industry, and $16,443.38 to the Water & Sewer Authority. (Certified Record Item 37, Condemnee's Petition for Declaratory Relief ¶¶11-13 & Exs. 7-9; Certified Record Item 40, Township Petition to Strike Petition for Declaratory Relief ¶¶3-4 & Ex. B.)

3

Between April 2009 and October 2014, Condemnee filed several unsuccessful motions in the trial court, variously titled as motions for declaratory judgment and for contempt, challenging the Township's payment of the $140,000 to the lienholders, and filed three appeals from denial of those motions, which this Court quashed as interlocutory. (Docket Entries, R.R. at 6a-12a.) On September 9, 2012, the trial court ordered that discovery and expert reports be completed by December 1, 2012. (*Id.*, R.R. at 8a.) Between October 2012 and the end of 2015, the case was placed on the trial list multiple times, but no trial was held. (*Id.*, R.R. at 8a-12a.) Following a May 2014 trial court order placing the case on the trial list and a contempt motion filed by Condemnee that was scheduled for a hearing on August 8, 2014, the Township, on August 1, 2014, served a notice to attend and produce documents on Condemnee. (Notice to Attend and Produce, R.R. at 129a-130a.) Condemnee filed a motion to quash the notice; the trial court did not rule on the motion to quash and denied the contempt motion. (Docket Entries, R.R. at 10a.)

On February 4, 2015, Condemnee executed a document assigning all of its rights to the Property and all of its rights in the condemnation proceeding to 1 Enterprises, LLC (Assignee), a Delaware limited liability company formed on January 22, 2015. (Assignment of Property Rights, R.R. at 262a-264a; Township Motion to Dismiss Ex. B, R.R. at 250a.) On March 9, 2015, counsel for Condemnee filed a praecipe to substitute Assignee as a party in the condemnation as the successor in interest to Condemnee and entered his appearance as counsel for Assignee. (Praecipe to Substitute, R.R. at 260a-261a; Docket Entries, R.R. at 12a.) The Township did not file any motion to strike this substitution or challenge

4

the validity of the assignment in response to this praecipe. (Docket Entries, R.R. at 12a.)

On March 4, 2016, the trial court ordered the case placed on the April 4 to April 15, 2016 trial list. (Docket Entries, R.R. at 13a.) On April 1, 2016, the Township filed a motion to dismiss the appeal from the board of viewers for lack of standing on the ground that Condemnee's certificate of formation had been canceled by the state of Delaware. (Township Motion to Dismiss, R.R. at 239a-254a.) The Township based its motion to dismiss on a September 17, 2014 printout from the Delaware Department of State, Division of Corporation website showing that Condemnee's certificate had been canceled on June 1, 2009 for nonpayment of taxes. (*Id.* Ex. A, R.R. at 248a.) The Township also filed a pretrial motion in limine on March 29, 2016 to exclude the testimony of Condemnee's appraiser. (Township Motion in Limine, R.R. at 211a-238a.)

On April 4, 2016, the case came to trial. The trial court denied the Township's motion in limine to exclude Condemnee's appraiser on the grounds that the Township's arguments were issues of credibility. (Trial Transcript at 77.) On the Township's motion to dismiss, the trial court held that Condemnee was the real party in interest, rather than Assignee, because the cancelation of Condemnee's certificate invalidated its 2015 assignment, and ruled that the trial would proceed with Condemnee, and not Assignee, as a party. (*Id.* at 50-74, 100-05, Supplemental Reproduced Record (Supp. R.R.) 3b.) Following these rulings and rulings on motions and arguments made by Condemnee, the parties waived jury trial. (*Id.* at 136, Supp. R.R. at 27b.) The trial court then held a one-day nonjury trial and viewed the Property the next day, April 5, 2016. (*Id.* at 136-211; Trial Court Findings and Verdict at 1.) At the trial, Condemnee put in evidence its

5

appraiser's testimony before the board of viewers opining that the fair market value of the Property at the date of the October 27, 2006 taking was $455,000 and its appraiser's report. The Township called as an expert witness an appraiser who inspected the Property in 2008 and opined that the fair market value of the Property at the date of the taking was $150,000, and introduced in evidence its appraiser's report and supporting documents.[1]

On April 6, 2016, the trial court entered a verdict awarding Condemnee $200,000 for the value of the Property on the date of the taking, finding that the Township was entitled to a credit of $140,000 against this amount for its lien payments, and awarding Condemnee appraisal and attorney fees of $4,000, as to which the Township was entitled to a credit of $2,500 for appraisal fees already paid. (Trial Court Findings and Verdict at 4.) Both parties filed motions for post-trial relief. The trial court denied the post-trial motions on May 12, 2016, but did not enter judgment. On June 7, 2016, before judgment was entered by the trial court, counsel for Condemnee and Assignee filed a praecipe to substitute Assignee as a party, attaching a May 25, 2016 Certificate of Good Standing from the State of Delaware showing that Condemnee had been restored to good standing. (Praecipe to Resubstitute Party, R.R. at 255a-258a.) The Township did not file any motion to strike or challenge this substitution. (Docket Entries, R.R. at 15a.) On April 25, 2017, on the praecipe of counsel for Condemnee and Assignee, the trial court entered judgment in favor of Condemnee in the amount of $61,500 in accordance with its April 6, 2016 verdict. (*Id.*; Certified Record Item

---

[1] The Township also called as a witness its former Director of Building, Planning & Development, who testified concerning the zoning status of the Property and the denial of a use and occupancy permit for the Property in 2005, but did not opine on the value of the Property.

153.)  Both Assignee and the Township appealed from the judgment and the appeals were consolidated by this Court.[2]

*The Township's Appeal*

The Township argues as the primary ground of its appeal that the trial court's judgment must be reversed because Condemnee did not have standing to pursue its claim for just compensation.[3]

Delaware's Limited Liability Company Act, under which Condemnee was formed, provides that a limited liability company's certificate of formation may be canceled for nonpayment of taxes and that a limited liability company "may not maintain any action, suit or proceeding" while it is not in good standing due to nonpayment of taxes.  6 Del. Code § 18-1107(h), (l); 6 Del. Code § 18-1108.  The Delaware Limited Liability Company Act also prohibits maintenance of any action or proceeding by an assignee of a limited liability company that is not in good standing where the assignment was made while the limited liability company was not in good standing.  6 Del. Code § 18-1107(l).  Condemnee's certificate had been canceled for nonpayment of taxes in 2009 and Condemnee's and Assignee's counsel admitted that Condemnee had not yet paid the outstanding tax liabilities to

---

[2] Our review of a judgment following a nonjury trial is limited to examining whether the trial court's factual determinations are supported by competent evidence and whether the trial court committed an error of law.  *Southwest Regional Tax Bureau v. Kania*, 49 A.3d 529, 532 n.5 (Pa. Cmwlth. 2012); *Commonwealth v. Hoffman*, 938 A.2d 1157, 1160 n.10 (Pa. Cmwlth. 2007).

[3] Assignee has filed applications to strike numerous statements in the Township's brief and reply on the ground that they allegedly are not supported by the trial court record.  Both applications to strike are denied.  The vast majority of the items that Assignee seeks to strike are either fully supported by the record or are argument from the facts in the record.  While a small number of statements in the Township's principal brief, concerning appearances before the board of viewers and alleged notices to appear and produce other than the August 2014 notice, are not supported by the record, this Court has disregarded those assertions and considered only documents in the trial court record.

be restored to good standing at the time the case came to trial. (Township Motion to Dismiss Ex. A, R.R. at 248a; Trial Transcript at 100-01.)

The cancelation of Condemnee's certificate was a curable defect, however, not a permanent bar to Condemnee's and Assignee's rights in this eminent domain case. Under the Delaware Limited Liability Company Act, cancelations and loss of good standing for nonpayment of taxes do not dissolve the limited liability company or permanently divest it or its assignees of rights. 6 Del. Code § 18-1107(i), (k), (l), (m); *Chantz Enterprises, LLC v. JHL Brighton Design/Decor Center, LLC*, (Del. Super. No. 09C-06-072 MJB, filed June 30, 2010), 2010 WL 2642885 at *3; *Western States Federal Contracting, LLC v. Department of Veterans Affairs*, 667 Fed. Appx. 775, 777 (Fed. Cir. 2016). The statute expressly provides for restoration of the company to good standing upon payment of all taxes, interest and penalties and limits its prohibitions to the period before the company has been restored to good standing. 6 Del. Code § 18-1107(i), (l).[4] A limited liability company's cause of action therefore may not be dismissed

---

[4] Title 6, Section 18-1107(l) of the Delaware Code provides:

> A domestic limited liability company that has ceased to be in good standing or a foreign limited liability company that has ceased to be registered in the State of Delaware by reason of its neglect, refusal or failure to pay an annual tax may not maintain any action, suit or proceeding in any court of the State of Delaware until such domestic limited liability company or foreign limited liability company has been restored to and has the status of a domestic limited liability company or foreign limited liability company in good standing or duly registered in the State of Delaware. An action, suit or proceeding may not be maintained in any court of the State of Delaware by any successor or assignee of such domestic limited liability company or foreign limited liability company on any right, claim or demand arising out the transaction of business by such domestic limited liability company after it has ceased to be in good standing or a foreign limited liability company that has ceased to be registered in the State of Delaware until such domestic limited liability company or foreign limited liability company, or any person that has acquired all or substantially all of its

**(Footnote continued on next page…)**

8

on the ground that its certificate was canceled or it was otherwise not in good standing earlier in the litigation, if it later pays the taxes, interest and penalties and is restored to good standing while the litigation is pending. *Chantz Enterprises, LLC*, 2010 WL 2642885 at *3; *Western States Federal Contracting, LLC*, 667 Fed. Appx. at 777. In addition, the Delaware Limited Liability Company Act provides that loss of good standing for failure to pay taxes does not invalidate the company's contracts or bar the company from defending proceedings against it. 6 Del. Code § 18-1107(m). In May 2016, after the trial and verdict but before judgment was entered, Condemnee was restored to good standing. (Certificate of Good Standing, R.R. at 258a.)

The Township contends that the trial court was required to grant its motion to dismiss Condemnee's appeal from the board of viewers for lack of standing because it was statutorily barred from litigating at the time of trial and because Condemnee had no interest in the litigation as a result of its assignment of its rights to Assignee.[5] We conclude that this claim of error is barred by waiver because the Township failed to timely challenge Condemnee's standing and agreed at trial that the proceeding could be adjudicated with Condemnee as a party.

---

**(continued…)**
> assets, has paid any annual tax then due and payable, together with penalties and interest thereon.

6 Del. Code § 18-1107(l) (emphasis added).

[5] The Township does not dispute that Assignee has standing to litigate this appeal. Assignee lacked standing at trial because Assignee's rights were based on the 2015 assignment while Condemnee was not in good standing and Assignee therefore could not assert claims based on the assignment until Condemnee was restored to good standing by payment of its tax liabilities. That defect, however, was cured prior to this appeal when Condemnee was restored to good standing in May 2016. Because the cancelation of a certificate does not invalidate the limited liability company's acts during the period of cancelation and the inability to assert claims based on the assignment ceases when is restored to good standing, 6 Del. Code § 18-1107(l), (m), Assignee is entitled to assert its rights under the assignment.

9

Lack of standing is not a jurisdictional defect. *Commonwealth v. Allen*, 107 A.3d 709, 711 n.1 (Pa. 2014); *City of Philadelphia v. Rivera*, 171 A.3d 1, 6 (Pa. Cmwlth. 2017). Objections to lack of standing, including claims of lack of capacity to sue, must be raised at the earliest opportunity and are waived if not promptly raised. *Erie Indemnity Co. v. Coal Operators Casualty Co.*, 272 A.2d 465, 467 (Pa. 1971); *Hall v. Episcopal Long Term Care*, 54 A.3d 381, 399 (Pa. Super. 2012); *Carroll v. Exeter Township*, (Pa. Cmwlth., No. 1580 C.D. 2013, Aug. 4, 2014), slip op. at 16-17 n.18, 2014 WL 3812323 at *6 n.18.[6]

The Township did not raise its objections to Condemnee's standing at the earliest opportunity. It was aware of the cancelation of Condemnee's certificate in 2014, as it attached a September 2014 printout of Condemnee's status as the basis for its motion to dismiss. (Township Motion to Dismiss Ex. A, R.R. at 248a.) The Township also received notice in March 2015 that Condemnee asserted that it had assigned all of its rights in the case to Assignee. (Praecipe to Substitute, R.R. at 260a.) Notwithstanding this knowledge, the Township did not raise its claim that Condemnee lacked standing until April 1, 2016, three days before trial, over a year after it knew of the bases on which it challenged Condemnee's standing. Because the Township did not timely raise the issue, its challenge to Condemnee's standing as a party at trial was waived and cannot constitute a ground for reversal of the trial court's judgment. *Hall*, 54 A.3d at 399 (challenge to plaintiff's standing was barred by waiver where it was first raised at trial in a directed verdict motion); *Carroll*, slip op. at 16-17 n.18, 2014 WL 3812323 at *6 n.18 (challenge to party's right to litigate eminent domain case

---

[6] While *Carroll* is an unreported decision and therefore not binding precedent, the Court finds it to be persuasive authority. *See* 210 Pa. Code § 69.414(a).

under assignment of rights was barred by waiver where it was first raised by motion in limine).[7]

In addition, the Township's counsel waived his objection to Condemnee's standing in his statements to the court at trial. Although the Township sought dismissal of Condemnee's claims in its motion, after the trial court indicated reluctance to dismiss the case in its entirety since Condemnee still had rights that it could enforce if restored to good standing, counsel for the Township agreed that the case could proceed with Condemnee as a party and expressed only concern with evidence rather than capacity to sue or standing:

> THE COURT: Well, are you saying that they have to somehow resurrect ACI [Condemnee] with the Delaware Corporation Bureau before it can do anything?
> MR. SACCO [Township Counsel]: Yes.
> THE COURT: Okay. And that if they don't do that the rights vanish or the rights still remain with ACI?
> MR. SACCO: The rights would still remain with ACI.
> THE COURT: Okay.
> MR. SACCO: I mean, how does ACI transfer an interest that -- when they're, in fact, not a legal entity?
> THE COURT: All right. So let's assume that I rule that the rights to pursue this action have not properly passed from ACI to 1 Enterprises, LLC, do we not just proceed with the trial on the basis that ACI is still the plaintiff or the condemnee?
> MR. SACCO: Sure. And they would have to appear. Apparently the member's still here. She signed something in 2015.

---

[7] Although counsel for Condemnee raised the fact that the Township had known of the cancelation of Condemnee's certificate since 2014 (Trial Transcript at 107-08), the trial court did not rule that the Township's motion was barred as untimely. This Court, however, may affirm a trial court's order on grounds other than those on which the trial court based its decision. *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1023 (Pa. Cmwlth. 2014); *Guy M. Cooper, Inc. v. East Penn School District*, 903 A.2d 608, 618 & n.9 (Pa. Cmwlth. 2006).

11

THE COURT: Okay.

MR. SACCO: And produced documents that we've asked for.

(Trial Transcript at 72-73) (emphasis added). Following this colloquy, the Township's counsel did not express any clear objections to proceeding with trial with Condemnee as the party seeking just compensation. Indeed, the Township asserted that "African Century Industries [Condemnee] is still a party in interest." (*Id.* at 105, Supp. R.R. at 3b.)

As a result of the Township's counsel's statements at trial, the trial court concluded that the standing issue was a question of which entity, Condemnee or Assignee, had the right to pursue the claim for just compensation, not a claim that dismissal or postponement of the trial was necessary. (Trial Court Findings and Verdict at 3; Trial Transcript at 95, 105, Supp. R.R. at 3b.) In its findings and verdict, the trial court described the issue raised by the Township's motion as "the issue of which entity had the right to pursue the claims against the Township in this case." (Trial Court Findings and Verdict at 3.) Having led the trial court to understand that it did not object to the trial proceeding with Condemnee as a party, the Township cannot now invoke the contention that dismissal was required to obtain reversal of a verdict that is not to its liking. *Estate of Hannis v. Ashland State General Hospital*, 554 A.2d 574, 576-77 (Pa. Cmwlth. 1989) (objection to substitution of new expert was waived where counsel agreed at trial that new expert could testify on subjects and opinions within scope of prior expert's report).

The Township also contends that reversal is required because the trial court failed to impose sanctions on Condemnee for failure to comply with a notice to attend and produce and that the trial court erred in admitting Condemnee's appraiser's testimony and report.

12

Rule 234.3 of the Pennsylvania Rules of Civil Procedure provides that a party may compel the attendance of another party's representative and production of documents at a trial or hearing "by serving upon that party a notice to attend substantially in the form prescribed by Rule 234.7 … reasonably in advance of the date upon which attendance is required." Pa. R.C.P. No. 234.3(a). Rule 234.7 prescribes a form of notice that states the date, time and location that the witness is directed to appear and produce documents. Pa. R.C.P. No. 234.7. If a party fails to comply with a valid notice to attend or notice to produce, the court may impose sanctions. Pa. R.C.P. No. 234.5(b).

Here, the Township's only notice to attend and produce documents is a notice that it served on Condemnee on August 1, 2014, over a year before the April 2016 trial at which Township claims that the notice should have been enforced. (Notice to Attend and Produce, R.R. at 129a-130a.) That notice did not set forth a specific date, time and location at which Condemnee's representative was required to appear and produce documents. Instead, it stated:

> You are directed to come to appear by and through your designated agents and records custodians at the hearing on your contempt motion at the time and place scheduled by the Court, and at the trial of this matter when scheduled by the Court, and at the time and place scheduled by the Court for trial, to testify on behalf of Bristol Township, in the above case, and to remain until excused.

(*Id.*, R.R. at 129a.)

Moreover, the Township did not request that the trial court impose particular sanctions on Condemnee after Condemnee failed to comply with the notice. Although the Township argued at trial that Condemnee must comply with its notice to attend and produce, the transcript does not show a request that the trial

13

court impose a specific sanction for the failure to comply or any request to enforce after trial began and no witness for Condemnee appeared. Notably, the Township does not cite in its brief to any place in the trial transcript that it requested imposition of a sanction for the failure to comply with its notice to attend and produce.

The decision whether to sanction a party for failure to produce a witness or documents is a matter committed to the sound discretion of the trial court. *Commonwealth Financial Systems, Inc. v. Smith*, 15 A.3d 492, 501 (Pa. Super. 2011). Given the vagueness of the notice, its lack of any temporal connection to the April 2016 trial and the Township's failure to make a clear request for specific sanctions, we cannot say the trial court's failure to impose a sanction on Condemnee rises to the level of abuse of discretion or reversible error.

The Township's arguments concerning the damages evidence at trial likewise fail. The Township argues that the trial court erred in admitting Condemnee's appraiser's valuation in evidence because it was based on uses of the Property that were not permitted under the applicable zoning ordinance and on sales that the Township contended were not comparable sales.[8] The trial court, however, did not accept Condemnee's appraiser's valuation as accurate or rely on it, concluding that the appraiser overvalued the Property "because he used an outdated Zoning Ordinance and failed to adequately consider the impact of the

_____

[8] The Township is correct that Condemnee's appraiser based his appraisal on a zoning ordinance provision that was no longer in effect at the time of the taking and on uses that were not permitted as of right. (Hoez Testimony at 54, 61-62, 72-74, R.R. at 320a, 327a-328a, 338a-340a.) The Township's attack on Condemnee's appraiser's comparable sales is more questionable. Three of the four sales that Condemnee's appraiser used in his valuation were considered as comparable sales by the Township's own appraiser. (*Compare* Condemnee Ex. 6 at 25-26, R.R. at 299a-300a *with* Township Ex. 3 at 21-22, R.R. at 396a-397a; Trial Transcript at 189.)

14

location of the property." (Trial Court Findings and Verdict at 2-3; Trial Court Pa. R.A.P. 1925 Opinion at 12-13.)  Any error in admitting this evidence was therefore harmless.  *McEwing v. Lititz Mutual Insurance Co.*, 77 A.3d 639, 651 (Pa. Super. 2013).

The Township asserts that absent Condemnee's appraiser's valuation, the trial court's award of $200,000 is not supported by substantial evidence.  We do not agree.  The Township's appraiser testified that, in his opinion, the fair market value of the Property was $150,000. (Trial Transcript at 180-82.)  The trial court found that this opinion significantly undervalued the Property because the Township's appraiser reduced the value due to conditions, the absence of water and sewer service and missing piping, that were not present at the date of the taking.  (Trial Court Findings and Verdict at 2-3; Trial Court Pa. R.A.P. 1925 Opinion at 12-13.)   We conclude that the trial court acted well within its authority as fact-finder and that there is no basis to disturb its determination of the Property's fair market value.

*Assignee's Appeal*

Assignee, in its appeal, seeks reversal of the trial court's finding that the Township was entitled to a credit of $140,000 against the $200,000 just compensation award.

Section 521(a) of the Eminent Domain Code provides in relevant part:

(a) Liens.--
(1) Damages payable to a condemnee under sections 701 (relating to just compensation; other damages) through 707 (relating to removal of machinery, equipment or fixtures), 713 (relating to delay compensation), 714 (relating to consequential damages), 715 (relating to damages for vacation of roads) and 902(b)(1) and (2) (relating to moving and related expenses of displaced persons) shall be subject to a

15

> lien for all taxes and municipal claims assessed against the property and to all mortgages, judgments and other liens of record against the property for which the particular damages are payable, existing at the date of the filing of the declaration of taking.
>
> (2) The liens shall be paid out of the damages in order of priority before any payment to the condemnee, unless released.

26 Pa. C.S. §521(a)(1)-(2).  Assignee attacks the $140,000 credit for lien payments on three grounds: 1) that the Township is not entitled to any credit for payment of liens because the validity of the liens was allegedly not established; 2) that the Township allegedly did not show that it paid $140,000 to the lienholders; and 3) that the evidence does not support the trial court's finding that the value of the liens on the Property on the date of taking was $140,000.

The first two of Assignee's arguments are barred by the admissions of Condemnee in the trial court.  Condemnee admitted that the recorded IRS, Department of Labor & Industry, and Water & Sewer Authority liens on the Property were valid.  (Answer to Petition to Distribute Just Compensation ¶¶6, 11, R.R. at 54a-55a; Memorandum of Law in Opposition to Petition to Distribute Just Compensation, R.R. at 67a-68a.)  Moreover, Condemnee expressly agreed in 2007, before the Township made the lien payments, that the Township could pay the face amount of those liens to those lienholders out of the just compensation, stating that

> the liens against the condemned property totaling $94,700.60 must be deducted from Condemnor's $115,000 in estimated just compensation as mandated by § 521 (a)(1) of the Eminent Domain Code.

(Memorandum of Law in Opposition to Petition to Distribute Just Compensation, R.R. at 68a) (footnote omitted).  Condemnee did not advise the Township at any time before the liens were paid that it had changed its position concerning any of

16

the IRS and Department of Labor & Industry liens or that it challenged the validity of any of those liens. (*See* Certified Record Item 37, Condemnee's Petition for Declaratory Relief ¶¶3-4.) Condemnee did notify the Township in November 2007 that it challenged the validity of one recorded Water & Sewer Authority lien in the amount of $1,251.73, but continued to admit that the other recorded Water & Sewer Authority lien was valid and could properly be paid. (*Id.* ¶¶3, 8 & Ex. 4.) Having agreed that the IRS and Department of Labor & Industry liens and one of the two recorded Water & Sewer Authority liens were valid and that the Township could and should pay those liens out of Condemnee's just compensation, Condemnee was estopped from changing its position after the Township reasonably relied on the absence of a dispute as to the validity of the liens and paid the holders of those liens. *Tryson v. Pennsylvania Insurance Department*, 784 A.2d 857, 859-60 (Pa. Cmwlth. 2001); *Fessenden Hall of Pa., Inc. v. Mountainview Specialties, Inc.*, 863 A.2d 578, 579 (Pa. Super. 2004).

Condemnee also admitted in the trial court that the Township paid $140,000 to the lienholders. Condemnee affirmatively asserted to the trial court that the Township in November 2008 paid $116,474.15 to the IRS, $7,082.47 to the Department of Labor & Industry, and $16,443.38 to the Water & Sewer Authority. (Certified Record Item 37, Condemnee's Petition for Declaratory Relief ¶¶11-13.) The contention that the Township did not pay $140,000 to the holders of liens on the Property is therefore waived. *In re Estate of Talerico*, 137 A.3d 577, 582 n.1 (Pa. Super. 2016) (on appeal, "[a] party cannot be permitted to question facts expressly admitted or deliberately waived at trial") (quoting *Education Resources Institute, Inc. v. Cole*, 827 A.2d 493 (Pa. Super. 2003)).

17

Assignee's third argument, challenging the value of the liens on the date of taking, is not waived or otherwise barred. This argument, however, fails on the merits. At trial, the parties introduced four documents from the lienholders to show the amounts of their claims: an April 13, 2007 Department of Labor & Industry letter stating that amount owed as of May 31, 2007 was $9,800.39, an April 3, 2007 IRS letter stating the amount of the liens as of April 30, 2007 was $123,636.65, an October 14, 2008 IRS Notice of Levy stating that the amount owed was $135,804.11 as of November 13, 2008, and statements from the Water & Sewer Authority showing that a total of $16,765.60 was owed as of the October 27, 2006 taking, consisting of $9,995.14 and $6,770.46 for the two addresses comprising the Property. (Condemnee Exs. 2, 3, 4, & 5, R.R. at 265a-270a.) These amounts exceed both the amounts paid to each of the lienholders and the $140,000 credit to which the trial court found that the Township was entitled.

Assignee argues that the evidence is insufficient to show that the Department of Labor & Industry and IRS payments were for principal and interest and penalties owed as of the date of taking because the letters from these lienholders state amounts owed six months or more after October 27, 2006. This contention is inaccurate. With respect to the Department of Labor & Industry, the fact that its April 2007 letter does not state the amount owed at the date of taking is immaterial because the amount of its liens in the Township's title report, which Condemnee admitted were owed at the time of the taking, was $9,451.46. (Petition to Distribute Just Compensation Ex. A, Title Report, R.R. at 42a-43a; Memorandum of Law in Opposition to Petition to Distribute Just Compensation, R.R. at 67a-68a.) Since the Township's payment of $7,082.47 to the Department of Labor & Industry was less than the $9,451.46 that Condemnee admitted was

18

owed on the date of taking, the conclusion that the Township was entitled to credit for this payment is supported by the record.

The trial court's conclusion that the Township's $116,474.15 payment to the IRS included only principal and interest and penalties owed as of the date of taking is also supported by the record. Condemnee admitted that the amount of the IRS liens totaled $82,910.67 as of the dates that they were filed in 1998, 2001, and 2002. (Petition to Distribute Just Compensation Ex. A, Title Report, R.R. at 42a-43a; Memorandum of Law in Opposition to Petition to Distribute Just Compensation, R.R. at 67a-68a; Certified Record Item 37, Condemnee's Petition for Declaratory Relief ¶19.) The Township's payment exceeded this face amount of the liens by $33,563.48. The evidence showed that post-filing interest and penalties of $40,725.98 had accrued on the IRS liens as of April 30, 2007. (Condemnee Ex. 2, R.R. at 265a.) While this date was six months after the taking, the period of time between the lien filings and the date of the taking ranged from approximately four years to eight years. (Petition to Distribute Just Compensation Ex. A, Title Report, R.R. at 42a-43a; Memorandum of Law in Opposition to Petition to Distribute Just Compensation, R.R. at 67a-68a.) Because 88% or more of the period of time between the lien filings and the April 30, 2007 date of the calculation of interest and penalties was before the date of the taking, the trial court could reasonably infer that at least $33,563.48 of the $40,725.98 in interest and penalties had accrued as of the October 27, 2006 date of taking.

The documentation concerning the Water & Sewer Authority showed the amount of its claim on the date of the taking and that amount, $16,765.60, was greater than the $16,443.38 that the Township paid to the Water & Sewer Authority. Assignee, however, argues that Section 521 of the Eminent Domain

19

Code provides for payment of only recorded claims against a condemned property and that the Water & Sewer Authority was therefore not entitled to payment of its full claim. We do not agree.

Section 521(a) of the Eminent Domain Code does not limit payment of municipal claims to recorded liens. Rather, it provides that just compensation awards "shall be subject to a lien for <u>all</u> taxes and <u>municipal claims assessed against the property</u> …, <u>existing at the date of the filing of the declaration of taking</u>." 26 Pa. C.S. §521(a)(1) (emphasis added). The Eminent Domain Code limits the requirement that the creditor's claim be "of record" to "mortgages, judgments and other liens." *Id.* Under Sections 1, 3, and 4 of the statute commonly known as the Municipal Claims Act of 1923 (Municipal Claims Act),[9] amounts billed for water and sewer service by the Water & Sewer Authority are municipal claims and recording is not a prerequisite to their validity or status as liens against the Property. 53 P.S. §§ 7101, 7106(a)(1), 7107; *In re Berwick Associates, Ltd.*, 178 B.R. 65, 66-67 (Bkcy Ct. M.D. Pa. 1994). Section 1 of the Municipal Claims Act provides:

> <u>The words "municipal claim," as used in this act, unless specifically indicated otherwise, mean and include</u> (1) the <u>claim arising out of, or resulting from</u>, a tax assessed, <u>service supplied</u>, work done, or improvement authorized and undertaken, <u>by a municipality, although</u> the amount thereof be not at the time definitely ascertained by the authority authorized to determine the same, and <u>a lien therefor be not filed</u>, but becomes filable within the period and in the manner herein provided …. A municipal claim shall be together with and shall include all penalties, interest, costs, fines, charges,

---

[9] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101, 7106, 7107.

> expenses and fees, including reasonable attorney fees, as allowed by this act and all other applicable laws.

53 P.S. § 7101 (emphasis added). Section 3 of the Municipal Claims Act provides that "[a]ll municipal claims … which may hereafter be lawfully imposed or assessed on any property in this Commonwealth … shall be and they are hereby declared to be a lien on said property, together with all charges, expenses, and fees incurred in the collection of any delinquent account, including reasonable attorney fees under subsection (a.1), added thereto for failure to pay promptly; and municipal claims and municipal liens shall arise when lawfully imposed and assessed." 53 P.S. § 7106(a)(1).

Assignee contends that absent recording, such liens could not be valid against Condemnee as a subsequent purchaser. Contrary to Assignee's assertions, the case law and statute on which it relies do not hold or provide a subsequent purchaser's rights in a property are exempt from all unrecorded municipal claims. Rather, they apply only where the lien has expired for failure to file within three years and the municipality seeks to later revive the lien. Section 1 of the Act of September 23, 1959, P.L. 955, *as amended*, 53 P.S. § 7432; *Sanft v. Borough of West Grove*, 437 A.2d 1332, 1333-34 (Pa. Cmwlth. 1981); *Sewer Authority of City of Scranton v. Arnold*, 385 A.2d 1034, 1035 (Pa. Cmwlth. 1978); *see generally In re Berwick Associates, Ltd.*, 178 B.R. at 67. In any event, the record here shows that Condemnee had notice of the unfiled municipal water and sewer claims when it purchased the Property. Condemnee took the position, in its valuation evidence, that the purchase price when it bought the Property in January 2006 included $113,772.68 liens and unpaid water and sewer bills and that this figure included unrecorded water and sewer charges. (Condemnee Ex. 6 at 12, R.R. at 285a; Hoez

21

Testimony at 57, 62-63, 65, 81-82, 96; R.R. at 323a, 328a-329a, 331a, 347a-348a, 362a.)

For the above reasons, we affirm the trial court's judgment.

_____
JAMES GARDNER COLINS, Senior Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Township of Bristol | : |
| | : |
| v. | : No. 658 C.D. 2017 |
| | : |
| 1 Enterprises, LLC, | : |
|         Appellant | : |
| | |
| Township of Bristol, | : |
|         Appellant | : |
| | : No. 727 C.D. 2017 |
| v. | : |
| | : |
| 1 Enterprises, LLC | : |

# **O R D E R**

AND NOW, this 5th day of January, 2018, the judgment of the Court of Common Pleas of Bucks County in the above-captioned case is AFFIRMED. The applications filed by 1 Enterprises, LLC to strike parts of the brief and reply brief of Township of Bristol are DENIED.

_____
JAMES GARDNER COLINS, Senior Judge